**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **BRIAN GILLESPIE,** )<br>)<br>**Plaintiff,** )<br>v. )<br>)<br>**JAMES G. COX, In his Official and** )<br>**Individual Capacity, PHILLIP R. ROSE, in** )<br>**his Official and Individual Capacity, and** )<br>**UNKNOWN AND UNNAMED OFFICIALS** )<br>**AT THE LOGAN CORRECTIONAL** )<br>**CENTER, in their Official and Individual** )<br>**Capacity,** )<br>)<br>**Defendants.** ) | **Case No. 06-CV-2120** |

**OPINION**

Plaintiff, Brian Gillespie, has filed suit against Defendants, James G. Cox and Phillip R. Rose, in their individual and official capacities, and "Unknown and Unnamed Officials at the Logan Correctional Center," under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment when they refused his repeated requests to be provided with prescription orthopedic footwear for a pre-existing medical condition, leading to damage to his feet. Defendants filed a Motion for Summary Judgment (#123) on Plaintiff's claims. Following this court's careful and thorough review, Defendants' Motion for Summary Judgment (#123) is GRANTED.

BACKGROUND

On November 1, 2005, Plaintiff, Brian Gillespie, filed his initial complaint (#1) against the Illinois Department of Corrections, Unknown and Unnamed Warden of Logan Correctional Center.

Plaintiff filed a first amended complaint (#10) on March 27, 2006, naming James G. Cox, and "Major" Rose, in their official and individual capacities as defendants. Plaintiff filed his second amended complaint (#34) on September 27, 2006, this time naming James G. Cox, in his official and individual capacity, and Phillip R. Rose, in his official and individual capacity, as Defendants.

In his second amended complaint (#34), Plaintiff stated that he was an inmate of the Illinois Department of Corrections at Logan Correctional Center, where Defendant Cox was Warden and Defendant Rose was Security Officer. Plaintiff was an inmate at Logan from September 20, 2001 to November 3, 2004. During this period, Plaintiff alleged, he was continuously denied access to his prescription orthotics by repeated denials of his requests to fill the prescription by officials at Logan. These denials caused him to experience intense physical pain and discomfort and to suffer permanent damage to his feet.

Count I of the complaint (#34) alleges violations of § 1983 by Defendant Cox in his individual capacity, claiming that Cox exhibited "deliberate indifference" to Plaintiff's medical needs for his orthotics and to his pain and suffering. Plaintiff claims that Cox's failure to heed his requests to get the prescription filled constituted a deliberate violation of his civil rights. Count II of the complaint (#34) alleges § 1983 violations by Cox in his official capacity as Warden, contending Cox knew of the seriousness of Plaintiff's medical condition, yet failed to furnish Plaintiff with the requested orthotics, again exhibiting deliberate indifference and cruel and unusual punishment. Counts III and IV repeated said allegations against Defendant Rose in his individual and official capacities and Count V repeated the allegations against Unknown and Unnamed Officials at Logan.

Defendants filed their Motion for Summary Judgment (#123) on June 4, 2008. In their

Motion, Defendants argued that Plaintiff's claims against them must fail because: (1) they are barred by the Statute of Limitations; (2) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; (3) Defendants are entitled to qualified immunity; and (4) to the extent the allegations are brought against Defendants in their official capacity, the Eleventh Amendment acts as a bar to Plaintiff's claim for damages. In support of their Motion, Defendants included several exhibits:

Exhibit A: An affidavit from Defendant Cox, stating that while he was Warden of Logan from May 16, 1999 through June 30, 2002, he was not a licensed physician and as Warden he had no authority to override the decisions of a treating physician or private medical vendor regarding treatment provided to an inmate. He relied on the facility medical professionals to assess and adequately treat inmate medical problems and at no time during his tenure as Warden did he either deny a request from Plaintiff to receive prescription orthotics nor did he have any role in such denials. He did admit to concurring, on May 27, 2002, in a denial of a grievance filed by Plaintiff regarding denial of his orthotics, but claims that he did not undertake any independent investigation into the allegations but rather relied on his staff to investigate. Further, as a result of the staff investigation, it was learned Plaintiff had been fitted for braces which were in the process of being made.

Exhibit B: An affidavit from Defendant Rose basically reiterating the same points made by Defendant Cox, in that he was not a licensed physician, had no authority to override decisions made by the treating physician or private medical vendors at Logan, relied on the medical professionals to adequately treat inmates, and at no time denied, or had any role in denying, Plaintiff's requests for prescription orthotics.

Exhibit C: Plaintiff's grievance of April 24, 2002, saying he had corrective surgery on both his feet and ankles and had to wear orthopedic supports, and that he arrived at Logan with a prescription for such supports. A doctor at Logan approved the supports, but the healthcare administrator denied the request. He was not informed of the denial for 2 months and was sent in circles when he tried to follow up. Defendant Rose informed Plaintiff that after his initial approval, the healthcare administrator denied the request and that was why he could not get security clearance for the supports. He then dislodged a tendon in his right foot due to the lack of supports. He filed a grievance.

A response to Plaintiff's grievance was filed on May 27, 2002, stating that documentation provided evidence that the braces were being made and that there was no evidence in the medical records that additional damage had occurred to Plaintiff, so the grievance was denied.

Exhibit D: Medical progress reports on Plaintiff's medical condition while at Logan. One document is from Wexford Health Sources, Logan's medical provider. It is dated March 3, 2002, and concerns Plaintiff's request for orthotics. Dr. Cleveland Rayford, the Illinois Regional Medical Director, rejected Plaintiff's request for orthotics as "not medically necessary at this time" and instead suggesting an alternative plan of sending Plaintiff to a podiatrist.

Exhibit E: Plaintiff's answers to Defendants' second set of interrogatories. In his answers, Plaintiff claims to have contacted Defendant Cox concerning Logan's failure to fulfill his prescription on at least 3 occasions. He also believes that his parents and Illinois State Representative Thomas B. Berns contacted Cox but to no avail. Plaintiff believed this resulted in a retaliatory refusal on Cox's part in failing to give permission to the healthcare unit to fill the prescription. He repeated these claims in an interrogatory concerning Defendant Rose.

Plaintiff filed his Response to Defendant's Motion for Summary Judgment (#126) on July 14, 2008. Plaintiff rejected Defendants' grounds for summary judgment, claiming: (1) Defendants knew the risk of harm to Plaintiff by personally denying him his orthotics and intentionally and deliberately denied him access to medical care, causing him harm in a deliberate and indifferent manner; (2) qualified immunity did not apply as the facts here showed a clear constitutional violation and that his rights were clearly established at the time of said violation; (3) the Statute of Limitations did not apply because it was tolled while he was in prison; and (4) the Eleventh Amendment concerns did not apply because Defendants have not provided factual information as to whether any damages against them would be paid out of the State Treasury.

Defendant attached several exhibits to his Response (#126):

Exhibit A: An affidavit from Plaintiff, stating that he entered Logan with a prescription for the orthotics from Dr. Kimberly Eickmeier and advised Logan personnel that his mother, Pattie Gillespie, would be sending him the orthotics. After not receiving the orthotics for a week, he learned his mother was having difficulty getting a security clearance for the footwear. In early October 2001 he discussed the issue with both Defendants Cox and Rose, advising them of the situation and that a prescription for the orthotics was in his personal file. Both Defendants advised Plaintiff to speak with healthcare at Logan. Upon speaking with healthcare, however, Plaintiff was told it was a security clearance matter. Defendant Rose told Plaintiff he would check into the matter and acknowledged the importance of Plaintiff receiving the orthotics. A few weeks later Plaintiff was in the chow line and spoke with Defendant Cox, who told him he would check into the matter and told him to re-contact Logan healthcare. Prior to March 2002, Plaintiff contacted Logan at least three times and Dr. Michael Clark of Decatur Memorial Hospital told him it was a security matter

because Dr. Eickmeier's prescription was in his personal file. He spoke further with Defendants and explained to them it was a security matter.

Exhibit B: An affidavit from Plaintiff's mother, Patti Gillespie, claims that she spoke to Defendant Rose in September 2001 and explained the situation regarding Plaintiff's orthotics to him. Rose responded by telling her that he understood the need because he himself wore orthotics and would check into the matter and get back to her. After weeks of no reply from Rose, Gillespie called a few more times, being told Rose had her name and number and would get back to her. Gillespie felt that the manner in which she was spoken to indicated that her calls were being screened and that calling back would meet with increasing resistance. She spoke with Plaintiff during this period and they discussed backing off on their requests concerning the orthotics, as they believed they were being punished by Defendants for their persistence.

Exhibit C: Dr. Eickmeier's prescription for Plaintiff's orthotics, dated August 31, 2001.

Exhibit D: Medical records of Plaintiff while incarcerated at Logan.

Exhibit E: Defendant Cox's Response to Plaintiff's Request for Admissions. In this Response, Defendant Cox admitted that he had the authority as Warden of Logan to resolve any security issues raised by fulfillment of a medical prescription, but denied that he (1) had knowledge of a physician's order for medical treatment of Plaintiff in the form of orthotics; (2) that he knew of Plaintiff's feet and ankle surgeries prior to his admittance at Logan; (3) that he denied Plaintiff permission to obtain the orthotics; and (4) that he had knowledge that Plaintiff had received the orthotics and that he failed to correct the situation by requiring Plaintiff's prescription for the orthotics to be filled by Logan staff members.

Exhibit F: Answers to Interrogatories Directed to Defendant James G. Cox. Defendant

denied knowledge again of the circumstances of Plaintiff's condition and denied any involvement in the decisions regarding the orthotics.

Exhibit G: Medical report on Plaintiff by Dr. Eickmeier from February 2005 indicating further possible damage to Plaintiff's condition due to his not having orthotics in prison.

Exhibit H: A letter from Dr. Eickmeier to Plaintiff's attorney concluding that Plaintiff suffered further injury to his ankle due to the absence of orthotics in prison.

Exhibit I: Medical operation report from May 28, 2008, at Rush University Medical Center.

Defendants filed their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (#128) on July 23, 2008.

ANALYSIS

In a summary judgment motion, the court must construe all facts and reasonable inferences in the favor of the non-moving party. Chelios v. Heavener, 520 F.3d 678, 685 (7th Cir. 2008). The court does not evaluate the weight of evidence, judge the credibility of witnesses or even determine the ultimate truth of the matter, but rather must determine whether there exists a genuine issue of triable fact. Chelios, 520 F.3d at 685. Summary judgment should only be granted where the pleadings, discovery, disclosure materials on file and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating that these requirements have been met and may relieve itself of that responsibility by showing that there is an absence of evidence to support the non-moving party's case. Celotex Corp., 477 U.S. at 322-23. To defeat a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for

trial. Chelios, 520 F.3d at 685. "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." Chelios, 520 F.3d at 685. Rather, the non-moving party must show that there exists evidence upon which a jury could reasonably find for him. Chelios, 520 F.3d at 685.

The first ground for summary judgment that the court will consider is whether Defendants violated Plaintiff's Eighth Amendment rights through deliberate indifference to his serious medical needs. The government does have an obligation to provide medical care for those incarcerated prisoners. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Deliberate indifference to serious medical needs of prisoners constitutes the "'unnecessary and wanton infliction of pain'" proscribed by the Eighth Amendment. Estelle, 429 U.S. at 104, citing Gregg v. Georgia, 428 U.S. 153, 173 (1976). Indifference can be manifested through prison doctors in their response to a prisoner's needs, a prison guard intentionally interfering with treatment once prescribed, or intentionally delaying access to medical care. Estelle, 429 U.S. at 104.

That does not mean, however, that every claim by a prisoner that he has not received adequate medical care states a violation of the Eighth Amendment. Estelle, 429 U.S. at 105. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. at 105-06. Complaints that a physician has been negligent in diagnosing or treating a medical condition do not state valid claims of medical mistreatment under the Eighth Amendment and medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle, 429 U.S. at 106. Rather, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs." <u>Estelle</u>, 429 U.S. at 106.

"To violate the Cruel and Unusual Punishments Clause of the Eighth Amendment, a prison official must have a 'sufficiently culpable state of mind.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). The state of mind must be one of deliberate indifference to inmate health or safety. <u>Farmer</u>, 511 U.S. at 834. While deliberate indifference entails something more than mere negligence, it can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. <u>Farmer</u>, 511 U.S. at 835. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to unmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. Subjective recklessness is the test for deliberate indifference. <u>Farmer</u>, 511 U.S. at 839-40.

In general, a prison official violates the Eighth Amendment only when 2 requirements are met: (1) the deprivation alleged must be sufficiently serious (such as inadequate treatment of a serious nature) and (2) the defendants must exhibit deliberate indifference. <u>Forbes v. Edgar</u>, 112 F.3d 262, 266 (7th Cir. 1997). Again, ordinary medical malpractice does not implicate an Eighth Amendment violation. <u>Forbes</u>, 112 F.3d at 266. The Eighth Amendment does not apply to every alleged deprivation suffered by a prisoner, but only to a narrow class of deprivations involving serious injury inflicted by prison officials acting with a culpable state of mind. <u>Snipes v. Detella</u>, 95 F.3d 586, 590 (7th Cir. 1996), <u>citing</u> <u>Hudson v. McMillan</u>, 503 U.S. 1, 19 (1992) (Thomas, J., dissenting). To raise an Eighth Amendment issue, the infliction of the punishment must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have

committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable. Snipes, 95 F.3d at 590. "Mere negligence or even gross negligence does not constitute deliberate indifference." Snipes, 95 F.3d at 590. Medical decisions that can be characterized as examples of medical judgment, such as whether one course of treatment is preferable to another, are beyond the purview of the Amendment. Snipes, 95 F.3d at 591.

Further, the instant case involves a suit over medical decisions against non-medical personnel, namely the prison Warden and security officer. A non-medical person, if he or she is aware of the problem, must respond reasonably, which can include investigating the situation and making sure that the medical staff was monitoring and addressing the problem and that non-medical official can reasonably defer to the medical professionals' opinions. See Johnson v. Doughty, 433 F.3d 1001, 1010 (7th Cir. 2006). A non-medical prison official cannot be held deliberately indifferent simply because he failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Johnson, 433 F.3d at 1012.

There is also the issue of personal involvement on the part of Defendants. "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish defendants' personal responsibility for the claimed deprivation of a constitutional right." Crowder v. Lash, 687 F.2d 996, 1006 (7th Cir. 1982). An official's direct participation in the deprivation is not required, however, and that official will satisfy the personal responsibility requirement if he or she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at the official's direction or with their consent. Crowder, 687 F.2d at 1006. Thus, a supervisor must be personally involved in the alleged conduct to be liable as those who are

merely negligent in failing to detect and prevent the subordinates' misconduct are not liable. Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988).

In the instant case, Plaintiff claims that Defendants were personally responsible for the deprivation of constitutional right, in that denial of his orthotics caused him injury and represented deliberate indifference in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment. Under the case law, however, Plaintiff's claim must fail. There is no evidence that Defendants' exhibited "deliberate indifference" to Plaintiff's suffering or were sufficiently culpable in Plaintiff's injuries. Rather, the most direct evidence as to what occurred comes from the grievance report (Exhibit C in #123) from April 2002. In that grievance report, Plaintiff states that his requests for orthotics, despite being approved by Dr. Clark from the hospital in Decatur, were repeatedly denied by the prison's healthcare administrator/director and Wexford Health Sources. The grievance further stated that Plaintiff had been fitted by the "Orthotics Technician" and the braces were in the process of being made. Based on this, the grievance committee denied Plaintiff's grievance, stating: "In conclusion, documentation provides evidence that the braces are being made but there is no evidence in the medical record that additional tendon damage has occurred therefore that part of the grievance is denied." Defendant Cox concurred in the recommendation of the grievance officer supporting the healthcare administrator's denial of Plaintiff's request for orthotics.

The evidence shows that Defendants were following the recommendations of the health care professionals at Logan. Further, the grievance report states that Plaintiff was in the process of having braces fitted, showing he was getting some form of relief. If anything, there may be slight evidence of negligence on the part of the prison healthcare administrator in not procuring the proper orthotics recommended by Dr. Clark or based on Plaintiff's prior prescription from Dr. Eickmeier

(once Plaintiff arrived at Logan, however, he was under the medical care of the prison healthcare providers and it is their treatment recommendations that Defendants must rely on). However, mere negligence on the part of the medical staff that Defendants supervised, even if that negligence were somehow characterized as gross negligence, does not rise to the level of deliberate indifference sufficient to implicate a constitutional deprivation. See Snipes, 95 F.3d at 590.

Further, the evidence shows that Defendants, as non-medical officials, acted responsibly and reasonably with regard to Plaintiff's requests. Plaintiff claims that he made direct complaints to Defendants and Defendants promised they would investigate the situation. There was a staff investigation and Defendants adopted the grievance committee's recommendation on the situation which backed up the prison's medical professionals' actions. Wexford Health Sources had rejected the request for orthotics as "not medically necessary at this time." Defendants cannot be found to be deliberately indifferent when they fail to positively respond to Plaintiff's medical complaints because they have reasonably deferred to the prison healthcare administrator's recommendation. See Johnson, 433 F.3d at 1010-1012.

Finally, there is no evidence that Defendants acted with any sort of intentional animosity towards Plaintiff due to Plaintiff's and his mother's repeated requests to get the orthotics. All that is presented is the affidavit of Plaintiff's mother where she alleges that she and Plaintiff got the impression that his treatment by Defendants was intentional because of their persistence. There is no genuine issue as to any material fact in this instance however, because this "mere scintilla" of evidence is insufficient to show that Defendants were intentionally and purposefully denying the orthotics to Plaintiff as some sort of punishment for his persistence in requesting them. See Chelios, 520 F.3d at 685.

In conclusion, Defendants have demonstrated there is no genuine of material fact with regard to Plaintiff's claim under § 1983. The evidence shows that Defendants reasonably relied on the recommendations of the prison's healthcare administrator in denying Plaintiff's request as shown by their adoption of the grievance committee report. The report found that Plaintiff was in the process of receiving braces for which he had been fitted and that no additional tendon damage had occurred. Even if after leaving prison tendon damage had been found to occurred, it may have amounted to negligence, but negligence, even gross negligence, does not rise to the level of deliberate indifference so as to state a claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment. Defendants' Motion for Summary Judgment (#123) is hereby GRANTED as to all counts.[1]

IT IS THEREFORE ORDERED:

(1) That Defendants' Motion for Summary Judgment (#123) is GRANTED as to all counts.

(2) Judgment is entered in favor of Defendants and against Plaintiff on Plaintiff's second amended complaint (#34).

(3) This case is terminated.

ENTERED this  19th  day of August, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

---

[1] Since we have disposed of the Motion for Summary Judgment on the issue discussed above, we need not address the other grounds raised by Defendants in their Motion.